This morning is Storm Products v. Ebonite. Mr. Brugge? Vorderbrugge, Your Honor. Brugge. Vorderbrugge. Yes. Excuse me. Please proceed, Mr. Vorderbrugge. May it please the Court, good morning. This, of course, is an appeal from a de novo appeal from a summary judgment finding that the in a declaratory action for invalidity and non-infringement had carried its burden of showing that the subject patent is invalid as too indefinite. This Court's Miles-Layup case and other cases teach us that the degree of precision necessary for adequate claims is a function of the nature of the subject matter of the patent. So how would you have us construe the terms in this claim? The construction that we proposed to the District Court in the Markman brief was that the relativity term, of course, is the number of bowlers that can be accommodated by this method to, in effect, potentially waste one asset, the inserts, rather than waste the balls, and that the relativity is the number of balls versus the number of bowlers. So one less ball in bowlers? Could be, Your Honor. Yes, sir, could be. That's not a definition. Could be. There are how many billion people on the earth? I don't know how many of them bowl, but are you saying every single bowler minus one is your claim construction? Well, I don't think so in context, Your Honor, because you wouldn't have, you couldn't get that number of bowlers into a facility. So what are the place and time definitions? I mean, if I'm potentially an infringer out there, and I've got 40 balls and 41 bowlers, so you say I'm covered. Does that mean per day, per year? What if I have 40 balls and 20 bowlers at noon and 40 balls and 80 bowlers at midnight? Am I infringing at one point in time of a day and not another? Your Honor, I submit it's at a particular event where the inserts are present for the particular vendor who is using the method. So at an event, you say, an event, is that like a one-time event for an hour or a day? What if the event takes place over a course of three days? Is that for the whole three-day period of any, at any one point in time during that entire three-day period, you've got more bowlers than balls, you infringe? I would submit so, Your Honor. So we have a bowling convention with thousands of people present? That's the way the claim reads, Your Honor. Yes, sir. Yes, sir. Well, the claim reads specifically a relatively small number of bowling balls and a large number of bowlers. How do we know what it is? Well, I think the way you know that, Your Honor, is by what the number is relative to. Because if you look at the patent itself, there is a great deal of teaching about how to construe this claim. And the patent tells us that... Did you reject the about 21 balls construction? Our proposed construction did not adopt a specific number, but that number clearly provides the parameters and the dimension of what we're talking about here. That we're not, we're dealing with a very, very finite physical thing involving the dimensions of the human hand. But in the court below, you decided not to use that definition. Why are we supposed to accept it now? That's not the proposed definition, Your Honor. The argument is, respectfully, that, and I submit this was a point that we could not get across to the trial judge, that in construing the scope of the relative quantities that you would look at the known measurements of the human hand, which the patent actually teaches the normal span is 3 to 5 1⁄2 inches. That's what would get you to the 21. That's what would get you to the 21. Then why don't you just tell us 21 is your claim construction? Because that's not what the claim says, Your Honor. What I'm arguing is that you can construe... You're trying to get by an indefiniteness ruling. It seems to me, if I were standing in your shoes, I would be getting very definite. And I would be giving numbers, and I would be pleading with the court to see the wisdom of how definite you are giving a number of 21. Well, Your Honor, I just respectfully submit that just does not fit the precedence of the court. We have the Seattle box where you talk about spacers for pipes of a height substantially equal to or greater than. But you're the one that, at least in your briefing here, I thought you were grabbing onto the 3 to 5 1⁄2 range. So what you see you're making of it, if you're saying, point to that, saying it makes it definite, but then refusing to embrace it in terms of claim construction. So I don't understand what you're trying to tell us here. The argument, Your Honor, of course the standard for what the district court did was if the claim is insolubly ambiguous and there is no narrowing construction that can be adopted, the district court respectfully did not give it to the district court. So what would you have us do with that 3 to 5 1⁄2 inch number that appears in the specification? I would ask you respectfully to reverse the judgment and remand the case so that the judge can give us claim construction and give us something definite. Based on the fact that we hadn't gotten to claim construction at that point in the district court, but I respectfully submit that if you read the language of the patent... And he says he cannot get to a claim construction because you won't give him a number. That's the problem. He doesn't know what it means. He is seeing the same sorts of hypotheticals that Judge Prost and Judge Gallarza just gave you with thousands of people in a room, and you're saying one less than that's enough. If you read the language of the patent, Your Honor, and look at the cases where the court has... What language? Do you have anything in particular you want to look at? The patent tells us that the thing that the number is relative to is a relatively small number of balls... Are you talking about the claim language now? I'm sorry, Your Honor. What are you referring to in the patent? The claim language? No, I'm referring to the description of the embodiment of the invention. It teaches us, teaches one skilled in the art, that the quantities, the spatial quantities that we're talking about, the potential number of wasted balls, if you will, is bound by the very finite, everyday, commonplace span of the human hand. And it teaches us that the normal span range is three to five and a half inches. Well, actually, the embodiment says three and a half to five. It does, Your Honor. There is no consistency in the other column. It says three to five and a half. Obviously, the scrivener of the patent goofed up there, but if you adopt either range, the point is it's a very finite, narrow range. Okay, so your definition would be, going back to Judge Rader's point, so you're telling us that we should construe this as not being indefinite because we're limiting ourselves to this range of three to five and a half or three and a half to five, whatever. No, Your Honor, you should, it's a little bit different, you should hold that it's not indefinite because the patent contains sufficient information to teach someone skilled in the art. Then why don't you tell us that information? I'm just kind of astounded that you won't just say, well, it means about 21, because that's three to five and a half with the quarter inches in between? Well, Your Honor, the construction... And if you'd said that to the district judge, I have a feeling we wouldn't be here. A construction, Your Honor, of about 21, if that's the construction that the court chose to adopt, had it not found the patent invalid... We're not... ...would not be, I would submit, would not be an erroneous construction. Now, it would beg the question for the jury of what about means. But you argued against that in the district court. We declined to limit, Your Honor, the construction of the claim itself to that exact range, and I submit none of the precedence on these relative terms, even in much more exotic patent situations involving formulas, involving the height of the spacers for the pipes, if you look at the orthokinetics case... Let's assume we were to adopt a construction that said three to five and a half, or three and a half to five, whichever it is. That goes to the number, the maximum, how we construe relatively small number of balls, right? Correct, Your Honor. But then what would be the bowler part of it that would be more than 21? So if we have 21 balls, we have anything 22 or more bowlers, that would be the construction? I would say if you adopted a construction that said about 21 balls, although it would still leave some flexibility, then the number of bowlers would be relative to that. About 22 or more? What is about me? Well, I think that's the problem with... So you want to make a... I mean, if we think it's indefinite, if we don't have the number 21, you're saying, well, okay, take the number 21, but give us an about so we can be back to where we started, which is to have no meaning at all. Well, Your Honor, in Exxon, for example, the language was sufficient period. There was no precise measurement of the period involved in that case. In the LNP case, substantially completing weather... You started off by talking about, when I asked you about time and place, I think you said by per event. Can you tell me what in the specification points us to that kind of clarity or definitiveness in terms of event? In the background, Your Honor, I think it's implicit from the background that this involves an event where customers are trying out balls. Now, the event could be an hour. It could be a day. It's certainly not a year. I don't... I'd submit a person skilled in the art, knowing the information in the patent, would not interpret it to mean a year-long event. So if it's an hour, and for one particular moment, you have 23 people, 23 bowlers, 21 balls, so you're infringing at that particular time, even though it's just once. I mean, people are walking in and out.  But with respect to other times, if there are fewer than 21 bowlers in the facility participating in the event, then you're not infringing. If there would be another event at another, completely another time, or at another vendor, which would not have possession of the inserts, then that's correct, Your Honor. I'm into my reply time. I do want to answer any and all questions the Court has. You can save the rest, Mr. Vorderbrugge, and we'll hear from Mr. Burton. Thank you very much, Your Honor. Good morning, Your Honors. May it please the Court. Mr. Burton, it says right here in Column 1 that it's an object of the invention to use the 3 to 5 1⁄2 span with an 1⁄8 inch spacing, gets you to 21. That's pretty clear, isn't it? I mean, what more do you need? 21 is 21. I understand that Mr. Vorderbrugge doesn't want to say that, but that's what his patent says, whether he says it or not. Well, right. First of all, I won't say it. But his patent says it, and that's what we're construing. Sure. And the patent says what, Your Honor, just absurd, but it says other things as well. This is one object of the invention. It says that there are other objects of the invention which will be found. But there's nothing indefinite here, is there? I mean, you know exactly what you're doing. Your Honor, this is just, at best, one embodiment, as Ebonite acknowledged in the court below. It's just one. And the court cannot just bring that one embodiment and plug it into the claim as a limitation. As the court knows, that's not what the court does with claim interpretation. How many other embodiments can you have with a bowling ball? Well, you can have multiple here, Your Honor, because the embodiment we're talking about is one-eighth intervals between three and a half and five, three to five and a half inches. But if we calculated that, we'd end up with 21, wouldn't we? We would. But in any particular case, you might have just three of those intervals.  You can have any permutation or combination of 21. Moreover, in the very next column, excuse me? Then you don't infringe. Well, if the claim were to be interpreted, you must have 21. That's right, Your Honor. Then if you have 20, you're not infringing. I'm not sure Ebonite is proposing that claim interpretation. But about 21, so maybe it's 20, 21, maybe even 19, but you're not going any further than that. And that seems to be what the patent says. Well, it's one possible. No, it says it is the object of the invention to provide a relatively small number of balls and then gives the span. That's the object. The very next column, Your Honor, it talks about a span between three and a half and five inches. Well, that'd be less than 21. So then the question would be, should the claim be interpreted to cover 15 balls? Which is it? It doesn't tell us. There's no determination here. There's nothing specific. The guy is the person of skill and the art to know, should it be 15, should it be 21, or should it be some other number? And what if the standards in the industry change? So the one-eighth intervals aren't the approved intervals any longer. What if we have a group of balls for children? So the span is less than three and a half inches, or for extraordinarily large hands, so it's greater than five and a half inches. This is just one example, as the patent itself is implying. Is that really still coming up with a maximum of 21? What if we said it was a maximum of 21 and interpreted that as the top of the range? The maximum number of balls that you could have? Your Honor, I suppose the Court could say that, but again, there's not support in the spec to say this is what a small or relatively small number should be. We don't have anything in this specification whatsoever which guides us as to what the ratio between small and large should be. It doesn't give us any guidance as to what large should be involved. Would it make any difference if we decided that basically you could go to a maximum of 21 and a minimum of 3, using the written description to determine that? Could we do that? I don't think the Court could do that, Your Honor. Isn't this more definite than orthokinetics? No, Your Honor. In orthokinetics, you're folding wheelchairs into automobiles. The number of automobiles far exceeds 21. The number of wheelchairs far exceeds all the measurements we'd be doing. The amount of knowledge required of one of skill in the art to traverse the indefiniteness there was far more than here, where it's 21 or less, and okay, maybe it's 15, but one of skill in the art is going to figure that out very quickly. First of all, Your Honor, the claim term relatively small is only part of what we're dealing with here. We're dealing with the relatively. We're dealing with large number of bowlers. We're focusing just on what is small. What is a small number here? So if we adopt 21, where does that leave us with the relatively large? We still don't have guidance as to what large is, Your Honor. Is it 21? We don't know. Is it 100? Would it be more than 21? Excuse me, Your Honor. Would it be anything more than 21 at that point? Would it not? Well, again, there's no guidance for that. It just says large. Now, large is a 20 degree— Well, it says relatively large, which is kind of even more ambiguous than large. I think the claim language itself just says large, Your Honor, to be fair. It just says a relatively small number of bowling balls for use in testing by a large number of bowlers, okay? And so is it 21 or is it something much more than that? We have zero guidance in the specification. And Datomize, quoting Seattle Box, says that the court must determine whether the patent's specification provides some standard. And we don't have any standard for measuring large. And getting back to the court's question about the orthokinetics case, in that case, we are dealing with claim language that was so dimensioned to be able to get into the open door of the car. And yes, there are thousands, perhaps, of brands of cars, each having maybe slightly different sizes of door openings. But I think one of skill in the art is going to be able to determine, okay, I need to be  And the court specifically found that a person of skill in the art would understand what it needed to do to meet the claim language of so dimensioned. But here we're talking about dimensions of a hand, right? So it's a normal range between 3 and 5 and a half? There are multiple options, more than even 21, Your Honor. What if a ball manufacturer decided, I'm going to start measuring at once or cutting, drilling holes at 1 16th of an inch diameters. It could do that and have 25 or 30 or 40 balls. It could decide even if it was going to stick with the 1 8th dimension, there's nothing in here that says that at a showcase or some event where a ball manufacturer is showing its balls that it might have multiples, it might have two or three or more at each interval. Is that, does the bowling ball manufacturer know that it's avoiding the claim? It only does if a court, I guess, determines that 21 is the number. But I would submit that the court would then be importing merely one possible embodiment of this invention. Well, you're suggesting 21 is the number, but that would mean that 21 also includes that there's only one ball at each interval. It's like, okay, if 21 is the number, that doesn't mean you can have 10 of one size and 11 of another size. That wouldn't come within the claim, would it? I think, Your Honor, it would avoid the claim. But again, that illustrates the ambiguity that we're dealing with here. A relatively small number of balls. If we just look and say, okay, we have 21 intervals at 1 8th inch between 3 and 5 1⁄2 inches, what if a ball manufacturer wants to have 3 at 3 inches, 3 at 3 1⁄2 inches, and you'd have more than 21? Does that make it a smaller number of balls? Does that depend on the number of bowlers that would be involved? Does it depend on the number of bowlers? I mean, you could have some at 3 inches, some at 5 1⁄2, and some in between. That's right, Your Honor. I think, in fact, what we're dealing with here is an event or a show or even at a pro shop just where bowlers are coming in and trying out balls. You might just have five balls here. And you might have one person come in at a time. And as the court observed, we don't have any time or place restrictions here. We don't know if this means over a one-year period or over a one-day period or over a one-hour period how we're going to measure the number of bowlers. But if the event holder decides, I'm going to have 100 people show up, but five balls at different intervals because I can have these spacers that I can use that size different hands, that's going to be a small number of balls, but it's not 21. What did you propose for the district court? We proposed, Your Honor, first of all, that this claim was not capable of construction. You said about 10 balls. We proposed as an alternative. If the court felt the need to construe the plan. Based on what? Based on the examiner's amendment, Your Honor, that said as an example. I'm sorry, the examiner's reasons for allowance. The examiner said that you could take about 10 balls as an example. That is the only guidance we have anywhere on the record that says anything about a specific number of balls. And so we, to the court, said this claim is not capable of construction. So the examiner understood that it was something less than 21 balls. I'm not even sure the court can infer that. Well, the patent tells us to start with 21 balls and go down. And so if he was throwing out an example, I don't think examiners can't limit claims anyway, but he wasn't limiting the claim. He was giving an example of the proper claim construction about 21 balls or less. Well, again, I don't believe that the examiner was assuming anything about 21. There's nothing, again, in this claim other than the one-eighth intervals that tells us that the 21 might be. That's a lot, isn't it? I mean, you can count. Can you count from three to five and a half by one-eighth? It's 21. And Your Honor is again making the point. And I don't even have to be the one that does it. It's one of skill in the art of bowling who must know this without even thinking about it. This is what they do for a living. And the standards might change, Your Honor. Maybe they won't be one-eighth intervals. And again, in the next column, it says three and a half to five inches. That's 15. Is 15 the number? Is 21 the number? I would submit these are given as examples, as Eponite has argued to the court. It doesn't want to be limited by the number 21. And it doesn't think it should be under this patent. Can I just add, you said one-eighth is an industry standard. Like, where does that come from? Is there something in the record? There's nothing in the record, Your Honor, that I'm aware of that provides that other than it says it's an industry standard. But does everybody agree that that's some standard somewhere? I believe it is a standard, Your Honor. I don't believe that's in the record to tell us that. Perhaps Mr. Vorderberg can enlighten us on that. But again... Does that standard, do you know if it also includes what portion of people fall within a particular range? I mean, there can be a span in terms of one-eighth, but it can be that 80% of the population falls into a narrower span, right? I don't know what the percentages are, but, Your Honor, we do have some guidance in column one in that very paragraph. It talks about the span of three to five and a half inches, which balls can be adapted for use by most bowlers. Again, that tells us this isn't all bowlers. And again, there may be some event for undersized people or large people, and we might have multiple different variations on this. Again, this illustrates how this claim is hopelessly insoluble. Insoluble. With one of skill in the art, designing bowling balls to appeal to the public so that they can test them, and you're not going to be testing balls for Kareem Abdul-Jabbar and his midget best friend. You're going to be testing it for the population you're selling to. In most cases, Your Honor. But wouldn't one of skill in the art know all this intuitively, exactly what the patent tells us? Again, the patent doesn't tell us exactly. It says most bowlers, it gives us different options. And again, this is why this claim is incapable of any results. But it does provide us with a maximum range based upon the numbers that are in the column one. I'm sorry, Your Honor. Doesn't that give you a maximum range? Well, it says for most bowlers. From three to five and a half. Three to five and a half is for most bowlers. It implies right there that it's not for all. Okay. But you do know the maximum. You can calculate the maximum number of balls and the spaces. You can calculate if you're assuming only one-eighth inch intervals and you're not going beyond three or five and a half. Well, if that's a standard in the bowling industry, that's what it would be. It doesn't tell us that that's a standard, Your Honor. I don't think that's in the record. And I just point out again that we've got other claim terms here. The other claim term is the large number of bowlers. There's nothing that tells us that other than to say it's more than one. But that's not a commonly known or commonly used reference for the word large. Large, again, has to have a meaning. I would submit that we don't have it here. This claim is not capable of interpretation as the district court correctly found. Thank you, Your Honors. Thank you, Mr. Burton. Mr. Vodabruga. Yes, sir. The one point that I would very much like to get across is, and Mr. Burton said, the patent does not tell us, quote, exactly. That that kind of exactitude has never been required by this court's precedence. Those pipe spacers in Seattle Box, they could have been much, much higher than the diameter of the pipe. The sufficient period for the process to take place in Exxon, this court said no limitation on that period is required. In the Oakley case, where we had this vivid colored appearance of the sunglasses, this court says the statute does not require a particular number. That was in a differential effect measurement. This statute does not require a particular number as a cutoff. In the Morosi case, which had to do with a compound synthesizing process, much more complicated than our patent here, the court said it is sufficient that the patent provided a general guideline and examples sufficient. So all of these cases could not have been, respectfully, could not have been decided the way they were, particularly in these much more complex arenas of chemical processes, spacer between boxes, putting a chair into a large variety of automobiles. None of these cases could have been decided this way, respectfully, if the law required, as Mr. Burton said, that the patent tell us, quote, exactly. The law does not require that. And it was the burden here of Storm to persuade a court, because we're de novo here, by clear and convincing evidence that this patent was insolubly ambiguous. The district court said that he had to make a, quote, reasonable effort to construe the patent. I submit that's not really as thorough a description as what this court's cases require the court to do. The court is not supposed to hold patent insolubly ambiguous unless it just cannot be construed or there is not an alternative construction of the claims that would say that. As the court pointed out in its questioning a minute ago, the issue here is what would a person skilled in the art of bowling, again, not nearly as complex as these chemical processes and whatnot, would understand this to mean. And we have guidance, exactitude not being required. We have guidance in the patent to teach one skilled in the art what it is that we're trying to accomplish here. And the court's decisions have also said that you can look at the purpose that's sought to be attained by the patent to figure out whether a particular use of the invention falls within the claim or not and whether the claim is sufficient. I'm over my time. Thank you, Mr. Bork. Thank you very much.